**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEFFREY HIMMEL, FOUR POINT VENTURES, LLC and HANNIBAL REAL ESTATE, LLC, | Civil Action No. 23-04306(JKS)(MAH) |
| Plaintiffs, | |
| v. | **OPINION** |
| WUNDERWEIN LLC and JAN SCHULER, | June 11, 2024 |
| Defendants. | |
| ----------------------------------------------------X | |
| WUNDERWEIN LLC and JAN SCHULER | |
| Counterclaimants, | |
| v. | |
| JEFFREY HIMMEL, FOUR POINT VENTURES, LLC and WILLIAM GOLDBERG | |
| Counterclaim Defendants. | |

**SEMPER**, District Judge.

The current matter comes before the Court by way of a Motion to Dismiss Counterclaims (the "Motion") filed by Jeffrey Himmel ("Himmel") and Four Point Ventures, LLC ("Four Point" and, together with Himmel, "Plaintiffs" or "Counterclaim Defendants").[1] (ECF 17.) Counterclaim Defendants' Motion seeks to dismiss the counterclaims asserted by Wunderwein LLC

---

[1] William Goldberg ("Goldberg") is an individual and an acquaintance of Himmel who is alleged to be a minority investor in Four Point. (ECF 10, Counterclaim ¶ 81.) While Goldberg has been named as a counterclaim defendant, it does not appear a summons has issued for Goldberg, and he remains a non-party to this litigation.

("Wunderwein") and Jan Schuler ("Schuler" and, together with Wunderwein, "Defendants" or "Counterclaimants") in their Answer and Counterclaim. (ECF 10.) The Motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(6) and was opposed by Counterclaimants. (ECF 28.) The Court reviewed all submissions in support and in opposition and decided the motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Counterclaim Defendants' Motion to Dismiss the Counterclaims is **GRANTED in part** and **DENIED in part.**

## I. BACKGROUND[2]

Counterclaim Defendant Jeffrey Himmel is an individual residing in New Canaan, Connecticut. (ECF 1, Compl. ¶ 4.) Himmel is the sole member of Counterclaim Defendant Four Point, a Delaware limited liability company. (*Id*. ¶ 5.) Counterclaimant Jan Schuler is a natural person who resides in Maplewood, New Jersey. (*Id.* ¶ 7.) Schuler is the "*arguendo*" sole member of Counterclaimant Wunderwein, a New Jersey limited liability company. (*Id.* ¶ 8; ECF 10, Answer ¶ 8.)

This action arises from the parties' purported business relationship as it relates to the import of German wine. (*See* ECF 1, Compl.; *see also* ECF 10, Counterclaim.) According to Counterclaimants, prior to 2021, Wunderwein acted as a wine broker specializing in sourcing German wines. (ECF 10, Counterclaim ¶¶ 3, 5.) Counterclaimants contend Schuler "grew an exclusive knowledge" and a "unique book of business, network and expertise" with respect to German wines. (*Id.* ¶ 7.)

---

[2] The background is taken from Four Point and Himmel's Complaint (ECF 1) and Wunderwein and Schuler's Counterclaim (the "Counterclaim"). (ECF 10.) The allegations in the Counterclaim must be accepted as true solely for purposes of this Motion, except where conclusory and/or implausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court also relies on documents integral to or relied upon by the Counterclaim and the public record. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Counterclaimants allege that, in or around April 2021, Himmel and Goldberg discovered the Wunderwein German wine club webpage and ordered certain wines through Wunderwein (in its capacity as a broker). (*Id*. ¶¶ 2, 3.) Thereafter, Schuler, Himmel and Goldberg engaged in conversations in which they discussed their shared interest in German wines. (*Id*. ¶¶ 9-15.) The Counterclaim alleges that discussions progressed among Himmel, Schuler, and Goldberg regarding, among other things, whether Schuler "needed assistance in scaling" Wunderwein. (*Id*. ¶ 18.) Schuler expressed a "desire to transition" Wunderwein from a broker to an importer and claimed his "extensive collection of [unidentified] vendors, wineries, and relationships" outside of the U.S. would make this possible. (*Id*. ¶ 19.) Counterclaimants allege that Schuler and Himmel discussed several business ideas including a German wine importing business. (*Id*. ¶ 25.) Counterclaimants allege the parties "reached an agreement for [Himmel's and/or Four Point's] investment of $150,000 in exchange for a Joint Venture." (*Id*. ¶ 32.) Counterclaimants also claim the "structure" of the purported "joint venture" was "50% Four Point Ventures and 50% Wunderwein." (*Id*. ¶ 79.)

Counterclaimants allege that the Joint Venture was "initiate[d]" when Schuler introduced Himmel and Goldberg to Schuler's unnamed "import service providers," unidentified "wineries" and unspecified "proprietary information belonging to Wunderwein and not available to the common population." (*Id*. ¶ 35.) Specifically, in or around November 2021, Schuler, Himmel, and Goldberg traveled to Germany, where they met with individuals at wineries where Schuler "had developed a relationship with over the last decade." (*Id*. ¶¶ 35, 36) Counterclaimants allege that these unspecified "wineries" and "import service providers" . . . were proprietary information to Wunderwein" (*Id*.)

In March 2023, five of the wineries are alleged to have visited New York for a "week of customer visits, store tastings and wine dinners." (*Id.* ¶ 92.) The Counterclaim alleges that during these visits, certain individuals from "some" of the wineries told Schuler that Goldberg had been "speaking to them behind Schuler's back" (*Id.* ¶ 102) and were "exploit[ing]" Schuler's alleged introduction of Goldberg to the wineries. (*Id.* ¶ 103.) Counterclaimants claim that they subsequently learned that Himmel (and Goldberg) began pursuing an opportunity importing German gin "outside of the [purported] Joint Venture." (*Id.* ¶ 113.) After this "incident," Schuler claims his relationship with Goldberg allegedly became "strained" and he "lost all desire to work with" Goldberg. (*Id.* ¶¶ 115-16.)

Based upon the foregoing, Counterclaimants assert seven counterclaims: (a) breach of fiduciary duty (Count I); (b) "lender liability" (Count II), (c) "tortious interference" (Count III); (d) unjust enrichment (Count IV); (e) breach of contract (Count V); (f) "breach of good faith and fair dealing" (Count VI); and (g) "injunctive relief" (Count VII).

## I.  STANDARD OF REVIEW

### A.  Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under the rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly*

*v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Restatements of a claim's elements are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

### B. Motion to Dismiss Counterclaim

"Courts use the same standard in ruling on a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6) as they do for a motion to dismiss a complaint." *RBC Bank (USA) v. Petrozzini*, No. 12-155, 2012 WL 1965370, at *2 (D.N.J. May 31, 2012). Under this standard, the counterclaim must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a counterclaim, the court must separate the factual and legal elements. *Fowler,* 578 F.3d at 210-211. Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). A court will, however, accept the counterclaim's well-pleaded facts as true. *Fowler*, 578 F.3d at 210. Moreover, a district court must draw all

reasonable inferences from the well-pleaded facts in favor of the counterclaimant. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).[3]

## II. ANALYSIS:

### A. Choice of Law

Because this Court hears this case pursuant to its diversity jurisdiction, it must apply state substantive law and federal procedural law. *Chaimberlain v. Giampapa,* 210 F.3d 154, 158 (3d Cir. 2000). The parties did not provide a choice of law analysis. However, Counterclaimants' claims arise under New Jersey law and the parties exclusively cite to New Jersey law. Seeing no reason to depart, the Court will apply New Jersey law in analyzing the sufficiency of the claims.

### B. Lender Liability (Count II)

As a threshold issue, even if plausibly pled, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015). Here, despite Counterclaimants' contention that New Jersey case law is "riddled" with lender liability causes of action, Counterclaimants fail to cite to any said case law. As currently pled, the Court is unable to discern what Counterclaimants intend by "lender liability" and therefore, Counterclaim Defendants Motion to Dismiss Count II is **GRANTED** and dismissed without prejudice.

### C. Breach of Contract (Count V)

Counterclaimant Defendants contend that the breach of contract claim should be dismissed because it fails as a matter of law. Specifically, Counterclaim Defendants contend that

---

[3] On a Rule 12(b)(6) motion to dismiss, a district court may not rely on matters extraneous to the pleading sought to be dismissed. Fed. R. Civ. P. 12(d). A motion to dismiss a counterclaim must be decided "on the face of the counterclaim." *Lukoil N. Am. LLC v. Turnersville Petroleum Inc.*, No. 14-3810, 2015 WL 5455648, at *1 (D.N.J. Sept. 16, 2015). However, in certain circumstances, a court may also consider undisputed and authentic exhibits as well as matters of public record. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1425 (3d Cir. 1997).

Counterclaimants do not adequately allege: (1) a breach of any obligations by Counterclaim Defendants; and/or (2) damages resulting from any purported breach. (ECF 17, Counterclaim Def. Br. at 11; ECF 31, Counterclaim Def. Rep. Br. at 3.)

"To prevail on a breach of contract claim under New Jersey law, a plaintiff must establish three elements: (1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages." *Mid-Am. Salt, LLC v. Morris Cnty. Coop. Pricing Council*, 964 F.3d 218, 226 (3d Cir. 2020) (citing *Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013)). To establish that a valid contract exists, a plaintiff must plead the following: (1) a meeting of the minds; (2) an offer and acceptance; (3) consideration; and (4) reasonably certain contract terms. *Sheet Metal Workers*, 737 F. 3d at 900.

Here, Counterclaimants have alleged an oral contract, specifically alleging that the Counterclaim Defendants and Third-Party Defendants have breached said contract, and that Counterclaimants have been damaged as a result while having performed its obligations as expected. (ECF 17, Counterclaim ¶¶ 32-44.) According to Counterclaimants, the Counterclaim "demonstrates the failure of Counterclaim Defendants [as it] discusses the failure of Counterclaim Defendants to cover Counterclaimants salary and that said conduct caused economic hardship for Wunderwein and the Joint Venture." (ECF 28, Counterclaimant Opp. at 7.) Specifically, the Counterclaim alleges that "[i]n pursuit of the Joint Venture, [the counterclaim defendants] were to fund Wunderwein to cover the salary of Schuller" that "Goldberg and Himmel failed to make the appropriate contributions as agreed to," and that "Schuller has lost out on revenue he would have made as a result of Counterclaim Defendant's failure to live up to their end of the bargain." (ECF

7

10, Counterclaim ¶¶ 164-69.) Based on the foregoing, the Court has determined that Counterclaimants have plausibly pled a breach of contract claim at this stage.

Accordingly, Counterclaim Defendants' Motion to Dismiss Count V of the Counterclaim is **DENIED.**

### D.  Breach of Fiduciary Duty (Count 1)

Counterclaim Defendants next contend that the Counterclaim fails to plead a breach of fiduciary duty. The Court disagrees.

"Claims for breach of fiduciary duty require: 1) the existence of a fiduciary duty or relationship between the parties; 2) breach of that duty; and 3) resulting damages." *Starland v. Fusari*, No. 10-4930, 2015 WL 5771617, at *6 (D.N.J. Sep. 3, 2015). With respect to the first element, "[t]he essence of a fiduciary relationship is that one party places trust and confidence in another who is in a dominant or superior position. A fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship." *F.G. v. MacDonell*, 696 A.2d 697, 704 (1997) (citation omitted). The threshold inquiry in any breach of fiduciary analysis is, therefore, whether a fiduciary relationship exists between the parties. *SalandStacy Corp. v. Freeney,* No. 11-3439, 2012 WL 959473, at *12 (D.N.J. Mar. 21, 2012).

#### 1.  Joint Venture

Counterclaim Defendants contend that Counterclaimants' breach of fiduciary duty claim fails from a joint venture perspective because 1) Counterclaimants only asserted this claim against Himmel and Goldberg, and they do not owe fiduciary duties to Counterclaimants; and 2) Counterclaimants failed to sufficiently allege the particulars of the breach of this duty against Himmel or Four Point. (ECF 19, Counterclaim Def. Br. at 16.)

8

A joint venture is predicated on the same legal event as an employment, partnership, contract, or other relationship: an agreement between the parties. *Sullivan v. Jefferson, Jefferson & Vaida,* 400 A.2d 836, 840 (N.J. Super. Ct. App. Div. 1979); *Wittner v. Metzger,* 178 A.2d 671, 674-75 (N.J. Super. Ct. App. Div. 1962), *certif. denied,* 181 A.2d 12 (1962). However, the joint venture relationship may be less formal. *Hellenic Lines, Ltd. v. Commodities Bagging & Shipping, Process Supply Co.,* 611 F. Supp. 665, 679 (D.N.J. 1985). It may be implied wholly or in part from the acts and conduct of the parties. *Id.* Where there is an explicit agreement, it "need contain no particular form of expression, nor is formality of execution necessary." *Wittner,* 178 A.2d at 675. Indeed, "There can be no question that joint venturers owe each other a fiduciary duty." *Lo Bosco v. Kure Eng'g*, 891 F. Supp. 1020, 1033 (D.N.J. 1995); *see also Starland*, 2015 WL 5771617, at *6 n.4 ("joint venturers owe each other a fiduciary duty because '[t]he relation of joint adventurers . . . is fiduciary, one of trust and confidence, calling for the utmost good faith, permitting of no secret advantages or benefits.'" (citation omitted). A joint venture is "an undertaking usually in a single instance to engage in a transaction of profit where the parties agree to share profits and losses." *Wittner*, 178 A.2d at 675 (quoting *Kurth v. Maier*, 31 A.2d 835, 836 (N.J. 1943)).

A joint venture ordinarily has some or all of the following elements: (1) a contribution by the parties of money, property, effort, knowledge, skill or other assets to a common undertaking; (2) a joint property interest in the subject matter of the venture; (3) a right of mutual control or management of the enterprise; (4) an expectation of profit; (5) the right to participate in profits; and (6) limitation of the objective to a single undertaking. *Wittner*, 178 A.2d at 675.

"The *sine qua non* of joint venture is a contract purposefully entered into by the parties. The joint venture is not a status created or imposed by law but is a relationship voluntarily assumed and arising wholly *ex contractu*, express or implied." *Sullivan*, 400 A.2d at 840; *see Material*

*Techs. v. Carpenter Tech. Corp.*, No. 01-2965, 2004 U.S. Dist. LEXIS 28892, at *22-23 (D.N.J. Dec. 14, 2004) ("A joint venture is predicated on the same legal event as an employment or partnership contract--an agreement between the parties."). The "basic criterion of a joint venture" is "the voluntary agreement of the parties to form a relationship with the intent to create a joint venture." *Sullivan*, 400 A.2d at 836; *see Read v. Profeta*, No. 15-2637, 2016 WL 8679223, at *7 (D.N.J. Apr. 15, 2016) (noting that joint venture is "voluntary agreement of the parties to form a relationship with the intent to create a joint venture."). "Whether or not the parties to a particular contract have, as between themselves, created the relationship of a joint venture depends upon their intention." *Starland*, 2015 WL 5771617, at *14 (quoting *First Mechanics Bank v. Commissioner*, 91 F.2d 275, 278 (3d Cir. 1937)). That is, "[f]or a joint venture to have been formed, the parties must have agreed upon the essential terms." *Burnham v. WMC Mortg. Corp.*, No. 07-6101, 2010 WL 2560657, at *7 (D.N.J. June 21, 2010).

At this stage, Counterclaimants have sufficiently alleged a joint venture. Indeed, Counterclaimants have alleged that the parties reached an "agreement for their investment of $150,000 in exchange for a joint venture." (ECF 10, Counterclaim ¶ 32.) Further, Counterclaimants specifically allege that the "Joint Venture consisted of a breakdown of the investment involved $75,000 allocated" for the wine and "$75,000 for [Counterclaimant Schuler's] Salary in the first year." (*Id.* ¶ 33.) However, Counterclaimant has only offered vague and conclusory allegations as to the breach and resulting damages of the purported fiduciary duty based upon the Joint Venture. Based upon the vague factual assertions in the Counterclaim, Counterclaimants have not sufficiently pled a claim for fiduciary duty based upon the purported joint venture.[4]

---

[4] The Court is similarly not moved by Counterclaimants' pleading with respect to the lender/borrower relationship. Specifically, in further support of their breach of fiduciary duty claim, Counterclaimants contend that Himmel and Goldberg owed fiduciary duties based upon the purported lender/borrower relationship. The Court disagrees. Counterclaimants make general conclusory statements with respect to Goldberg and Himmel's contention

10

Accordingly, Counterclaim Defendants' Motion to Dismiss Count I of the Counterclaim is **GRANTED** and dismissed without prejudice.

### E. Tortious Interference (Count III)

Counterclaim Defendants submit that Counterclaimants' claims of tortious interference must be dismissed as Counterclaimants have failed to state a claim pursuant to New Jersey law.

Specifically, Counterclaim Defendants contend that there are two types of tortious interference claims in New Jersey: one for interference with an existing contract and the other for interference with a "prospective contractual relationship." *See, e.g.*, *Nostrame v. Santiago*, 61 A.3d 893, 900 (N.J. 2013). The elements required to plead each claim are similar. To properly plead a tortious interference claim, Counterclaimants must allege: "(1) the existence of the contract [or the prospective economic relationship]; (2) interference which was intentional and with malice; (3) the loss of the contract or prospective gain as a result of the interference; and (4) damages." *Amgro, Inc. v. Lincoln Gen. Ins. Co.*, 361 F. App'x 338, 345 n.9 (3d Cir. 2010); *see also MedWell, LLC v. Cigna Corp.*, No. 20-10627, 2023 WL 4045089, at *2 (D.N.J. June 16, 2023) (quoting *Velop, Inc. v. Kaplan*, 693 A.2d 917, 926 (N.J. Super. Ct. App. Div. 1997) (parenthesis omitted)); *Vosough v. Kierce*, 97 A.3d 1150, 1159 (N.J. Super. Ct. App. Div. 2014) (same elements).

Here, the Counterclaim fails to: (1) identify wineries or other counterparties with whom Schuler or Wunderwein allegedly had a prospective "relationship";[5] (2) provide factual support

---

that "any amount beyond $85,000 should be considered a loan." (ECF 10, Counterclaim ¶¶ 50-52.) However, the attempts to plead a fiduciary duty in the relationship between Himmel, Goldberg, Four Point, and Counterclaimants falls short, not only because they are vague and conclusory, but also because New Jersey courts have "universally embraced" the presumption that "there is no fiduciary duty between a borrower and a lender." *Thomas v. Ne. Univ.*, No. 11-3905, 2011 WL 3205301, at *3 (D.N.J. July 27, 2011), *aff'd*, 457 F. App'x 83 (3d Cir. 2012) (quoting *Santone–Galayda v. Wachovia Mortg., FSB*, No. 10-1065, 2010 WL 5392743, at *16 (D.N.J. Dec. 22, 2010)). Indeed, in their Opposition to the Motion, Counterclaimants fail to cite to any case law supporting the proposition that its fiduciary claims can be based upon the lender/borrower relationship. (*See generally* ECF 28, Counterclaimants Opp.)

[5] The Counterclaim does identify Himmel and Goldberg's purported discussions with a German gin importer "outside of the joint venture." (ECF 10, Counterclaim ¶¶ 111-14.) However, the Counterclaim fails to cohesively plead

11

(other than conclusory allegations) as to the nature of the alleged relationship, whether it ever involved business dealings between the parties, and if so, the nature of that historical business; (3) allege any facts to establish that Counterclaimants' had a "reasonable expectation" that Wunderwein would be doing business with a single one of these unidentified counterparties (much less what that business terms were or might have consisted of); and/or (4) allege that Wunderwein actually lost a prospective business opportunity (i.e., damages) because of the alleged interference. While the Counterclaim broadly alleges unspecified relationships and contacts with various wineries, there is no specific allegation of intentional interference resulting in lost business or prospective business interfered with anywhere in the Counterclaim.

As a result, Counterclaim Defendants' Motion to Dismiss Count III of the Counterclaim is **GRANTED** and dismissed without prejudice.

### F. Unjust Enrichment (Count IV)

Counterclaim Defendants next argue that Counterclaimants' unjust enrichment claim must be dismissed because the unjust enrichment claim is entirely predicated upon vague and conclusory allegations. The Court agrees.

To state a claim for unjust enrichment, a party must allege "'(1) that the [opposing party] has received a benefit from the [party], and (2) that the retention of the benefit by the [opposing party] is inequitable.'" *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 519 (D.N.J. 2009), *aff'd,* 374 Fed. Appx. 341 (3d Cir. 2010). "Quasi-contract liability will not be imposed when a valid, unrescinded contract governs the rights of the parties." *Duffy v. Charles Schwab & Co.*, 123 F. Supp. 2d 802, 814 (D.N.J. 2000). "Since a plaintiff must confer a benefit on the defendant to support an unjust enrichment claim, this element has been interpreted by New Jersey courts as a

---

how the purported discussions with a gin importer (and not a wine) importer impacted any prospective economic relationship whatsoever.

requirement that 'the plaintiff allege a sufficiently direct relationship with the defendant to support the claim.'" *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 724 (D.N.J. 2011) (quoting *Nelson v. Xacta 3000 Inc.*, No. 08-5426, 2009 WL 4119176, at *3 (D.N.J. Nov. 24, 2009)). Furthermore, New Jersey's doctrine of unjust enrichment serves to protect a party's interest where an adequate remedy does not exist at law and equity demands restitution. *Cooper v. Samsung Elecs. Am., Inc.*, No. 07-3853, 2008 WL 4513924, at *9 (D.N.J. Sept. 30, 2008), *aff'd,* 374 F. App'x 250 (3d Cir. 2010).

Here, Counterclaimants vaguely assert that Counterclaim Defendants "obtained proprietary information and connections from the Counterclaimants and are now using those relationships to monetize their competition." (ECF 10, Counterclaim ¶ 161.) Further, Counterclaimants allege that because of this "non-tangible" proprietary information that Plaintiffs learned, they have gained required knowledge which they now seek to obtain for free by demanding claw back of what they paid for that knowledge." (*Id.* ¶ 162.) As pled, these allegations lack the requisite factual matter to comport with the pleading standards as they are conclusory and vague. Counterclaimants fail to allege the proprietary information being used, how it is being used to Counterclaim Defendants benefit, and how Counterclaimant Defendants retention of that benefit without payment would be unjust.

Counterclaim Defendants' Motion to Dismiss Count IV of the Complaint is **GRANTED** and dismissed without prejudice.

### G. Breach of Good Faith and Fair Dealing (Count VI)

As to Counterclaimants' claim for breach of the implied covenant of good faith and fair dealing, Counterclaim Defendants assert that it is duplicative of the breach of contract claim and that it is unintelligible and conclusory. (ECF 19, Counterclaim Def. Br. at 13-15.) The implied

covenant of good faith and fair dealing is a "component of every contract" that requires both parties to a contract act in "good faith[,]" that is, they must "adher[e] to 'community standards of decency, fairness, or reasonableness.'" *Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710, 722 (N.J. 2007) (internal citations omitted). Good faith "requires a party to refrain from 'destroying or injuring the right of the other party to receive its contractual benefits.'" *Id.* (citation omitted). To succeed on a claim for breach of the covenant of good faith and fair dealing, a party must prove that "(1) the [opposing party acted] in bad faith or with a malicious motive, (2) to deny the [party] some benefit of the bargain originally intended by the parties, even if that benefit was not an express provision of the contract." *Yapak, LLC v. Mass. Bay Ins. Co.*, No. 09-3370, 2009 WL 3366464, at *2 (D.N.J. Oct. 16, 2009).

As a starting point, Counterclaimants fail to plausibly plead a violation of the implied covenant of good faith and fair dealing as the allegations in the Counterclaim are set forth in a conclusory fashion. Counterclaimant is reminded that the Court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey,* 481 F.3d 187, 211 (3d Cir. 2007); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 908 (3d Cir. 1997) ("[Courts] need not accept 'bald assertions' or 'legal conclusions' contained in the complaint.").

Moreover, pursuant to New Jersey law, "a plaintiff cannot maintain a claim for breach of the implied covenant of good faith and fair dealing when the conduct at issue is governed by the terms of an express contract or the cause of action arises out of the same conduct underlying the alleged breach of contract." *Kare Distribution, Inc. v. Jam Labels & Cards LLC*, No. 09-00969, 2012 WL 266386, at *7 (D.N.J. Jan. 30, 2012) (internal quotation marks omitted). Here, the Counterclaim arises out of the exact conduct underlying the alleged breach of contract and it is

difficult for the Court to discern the factual allegations which independently construct Counterclaimants' implied covenant claim. Based upon the Court's review of the pleadings, Counterclaimants seemingly recite the identical allegations found in their breach of contract claim concerning Counterclaim Defendants purported failure to honor their joint venture agreement. Specifically, Counterclaimants plead in a conclusory fashion that that Counterclaim Defendants failed to act in good faith by engaging in the conduct "as set forth throughout the Complaint." (ECF 10, Counterclaim ¶¶ 172-73.)

The Court agrees that as pled, this claim is duplicative of the breach of contract claim because they are both based on the parties purported "Joint Venture" and Counterclaim Defendants purported "fail[ure]" to honor the terms the parties "orally agreed to." (*Id*. ¶¶ 170-80.) In sum, the Court finds that the Counterclaim does not provide sufficient information to support the claim for breach of good faith and fair dealing. *See Connelly v. Lane Const. Corp*., 809 F.3d 780, 786 (3d Cir. 2016).

Counterclaim Defendants' Motion to Dismiss Count VI is **GRANTED** and dismissed without prejudice.

### H.  Injunctive Relief (Count VII)

Counterclaimants concede their demand for injunctive relief under Count VII of the Counterclaim. As a result, the Court accepts Counterclaimants withdrawal and concludes that Counterclaim Defendants' Motion to Dismiss Count VII is **GRANTED** and it is dismissed with prejudice.

### III.  CONCLUSION

For the reasons set forth above, Counterclaim Defendants' Motion to Dismiss the Counterclaim is **GRANTED in part** and **DENIED in part**. An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

| | |
|---|---|
| Orig: | Clerk |
| cc: | Michael A. Hammer, U.S.M.J. |
| | Parties |